**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **JOSEPH BARBERA, individually and on behalf of all others similarly situated,**<br><br>*Plaintiff*,<br><br>v.<br><br>**TRIZETTO PROVIDER SOLUTIONS, LLC; COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION; and BLUE CROSS BLUE SHIELD OF RHODE ISLAND,**<br><br>*Defendants*. | Case No.: 4:25-cv-01886<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Barbera, ("Plaintiff") brings this Class Action Complaint against Defendant TriZetto Provider Solutions, LLC, ("TriZetto"), Defendant Cognizant Technology Solutions Corporation ("Cognizant"), Defendant Blue Cross Blue Shield of Rhode Island ("BCBS") (collectively "Defendants") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

### PARTIES, JURISDICTION & VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and a certain number of members of the class are citizens of a state different from Defendants.

1

2.      This Court has personal jurisdiction over Defendants because Defendant TriZetto's principal place of business is in this District, conducts business in this District, and Defendants have sufficient minimum contacts with this District. Defendant TriZetto has also purposefully availed itself of the laws, rights, and benefits of the State.

3.      Venue is proper because Defendant TriZetto maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

4.      Plaintiff Joseph Barbera is a resident and citizen of Warwick, Rhode Island.

5.      Defendant TriZetto Provider Solutions is a limited liability company with a principal place of business located at 3300 Rider Trail South, Earth City, Missouri 63045. Defendant's registered agent is CSC-Lawyers Incorporating Service Company at 221 Bolivar Street, Jefferson City, Missouri 65101.

6.      Defendant Cognizant Technology Solutions has its principal place of business at 300 Frank W Burr Blvd, Suite 36, 6th Floor, Teaneck, New Jersey 07666. Defendant's registered agent is Corporation Service Company at 251 Little Falls Drive, Wilmington, Delaware 19808.

7.      Defendant Blue Cross Blue Shield of Rhode Island has its principal place of business at 500 Exchange Street, Providence, Rhode Island 02903. Defendant's registered agent is Kristen Shea McLean at 500 Exchange Street, Providence, Rhode Island 02903.

## FACTUAL ALLEGATIONS

8.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the protected health information and other personally identifiable information of

2

certain individuals including name, address, date of birth, Social Security number, and health insurance information ("PHI/PII").

9.      Defendant TriZetto is a revenue management service that provides care management services to physicians, hospitals, and health systems. Defendant TriZetto is a subsidiary of Defendant Cognizant.[1]

10.     BCBS is a customer of TriZetto. TriZetto provides BCBS health plan's claims processing, premium billing, membership administration and other core administrative functions.[2]

11.     Plaintiff is a customer of BCBS.

12.     On or about October 2, 2025, Defendant TriZetto discovered that an unauthorized party gained access to its system that contained private information (hereafter referred to as the "Data Breach").[3] The unauthorized access to Defendant TriZetto's system began in November 2024 and continued almost a year before the unauthorized access was detected.[4]

13.     Defendants have not disclosed the details of the root cause of the Data Breach, the vulnerabilities exploited, or the remedial measures undertaken to ensure such a breach does not occur again. To date, these omitted details have not been explained or clarified to Plaintiff, who retains a vested interest in ensuring that their Private Information remains protected.

14.     Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's data was a known risk to Defendants, and thus, Defendants were on notice that failing to take steps necessary to secure the information from those risks left the data in a dangerous condition.

---

[1] https://www.trizettoprovider.com/who-we-are/our-story (last accessed December 29, 2025)
[2] https://go.gale.com/ps/i.do?id=GALE%7CA366540048&sid=sitemap&v=2.1&it=r&p=HRCA&sw=w&userGroupName=nysl_oweb&isGeoAuthType=true&aty=geo (last accessed December 29, 2025)
[3] https://www.hipaajournal.com/trizetto-provider-solutions-data-breach/ (last accessed December 29, 2025)
[4] *Id.*

15.     The Data Breach was a direct result of Defendants' failure to implement reasonable safeguards to protect PHI/PII from a foreseeable and preventable risk of unauthorized disclosure. Had Defendants implemented administrative, technical, and physical controls consistent with industry standards and best practices, they could have prevented the Data Breach.

16.     Defendants' negligence resulted in the unauthorized disclosure of Plaintiff's Private Information to cybercriminals. The unauthorized disclosure of Plaintiff's PHI/PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendants' failure to adequately secure the PHI/PII in their custody, and has resulted in actual, particularized, and concrete harm to the Plaintiff.  The injuries Plaintiff suffered, as described herein, can be redressed by a favorable decision in this matter.

17.     Defendants have not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendants have modified their data protection policies, procedures, and practices sufficient to avoid future, similar, data breaches.

18.     Medical records represent the most sensitive information available concerning a person's private affairs. These records reveal intimate and personal aspects of the human condition, such as illnesses that might carry social stigma and details about substance abuse, family planning and mental health. Congress has passed legislation under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in order to protect this highly confidential data, because in the wrong hands, bad actors may target and exploit the most sensitive and vulnerable populations among the public.

19.     Defendants had obligations created by statute, contract, common law, and industry standards to keep Plaintiff's and Class Members' PHI/PII confidential and to protect it from

4

unauthorized access and disclosure.

20.    Now, Plaintiff and Class Members face a substantial risk of future identity theft or other forms of exploitation where their identifying information was obtained by cybercriminals in a targeted attack. Medical identity theft, for example, involves the misuse of a person's unique medical identity to wrongfully obtain health care goods, services, or funds.[5] Medical identity theft "can result in bills for procedures the patient has never had, inaccurate medical records, and potentially life-threatening care."[6]

21.    Typically, hackers sell the personal information in medical records "to criminals who create phony providers to submit fraudulent claims on a mass scale that can result in hundreds of millions of dollars in Medicaid, Medicare, or other insurance fraud."[7]

22.    Defendants' negligence has created a substantial risk of future identity theft, fraud, or other forms of exploitation for Plaintiff and Class Members. The Private Information that was acquired by cybercriminals was acquired to perpetuate identity theft and fraud on Plaintiff and Class Members.

23.    The imminent risk of future harm resulting from the Data Breach is traceable to each Defendant's failure to adequately secure the PHI/PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiff.

24.    More specifically, the Plaintiff's exposure to the substantial risk of future exploitation caused them to: (i) spend money on mitigation measures like credit monitoring services and/or dark web searches; (ii) lose time and effort spent responding to the Data Breach;

---

[5] See, Common Types of Health Care Fraud, Center for Medicare & Medicaid Services (CMS) Fact Sheet, available at: https://www.cms.gov/files/document/overviewfwacommonfraudtypesfactsheet072616pdf
[6] Healthcare fraud and the burden of medical ID theft, available at: https://www.experian.com/blogs/healthcare/healthcare-fraud-and-the-burden-of-medical-id-theft/
[7] Someone could steal your medical records and bill you for their care. https://www.npr.org/sections/health-shots/2023/07/26/1189831369/medical-identity-fraud-protect-yourself

and/or (iii) experience emotional distress associated with reviewing accounts for fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach. The harm Plaintiff's suffered can be redressed by a favorable decision in this matter.

25.    Armed with the PHI/PII acquired in the Data Breach, data thieves have already engaged in theft and can, in the future, commit a variety of crimes including, opening new financial accounts, taking out loans, using Plaintiff's information to obtain government benefits, file fraudulent tax returns, obtain driver's licenses, and give false information to police during an arrest.

26.    As a result of the Data Breach, Plaintiff and the Class suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft and diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) statutory damages; (vi) nominal damages; and (vii) the continued and increased risk their Private Information will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement reasonable measures to protect the data.

27.    Plaintiff brings this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendants' inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach. Through this Complaint, Plaintiff seeks to remedy these harms individually, and on behalf of all similarly situated individuals whose Private Information was accessed during the Data Breach.

28.    Plaintiff has a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiff should be entitled to injunctive and other equitable relief.

29.    While providing a healthcare service, each Defendant collects, creates, or shares information about health status, provision of health care, or payment for health care that can be used to identify an individual.

30.    Defendants are entities covered by HIPAA (*see* 45 C.F.R. §160.102) and as such are required to comply with the HIPAA Privacy Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. Defendants are also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103 (hereafter, the HIPAA Privacy and Security Rules).

31.    The HIPAA Privacy Rule and Security Rule establishes standards for the protection of protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a covered entity. *See* 45 C.F.R. § 160.103.

32.    The Privacy Rule requires Defendants to implement appropriate safeguards to protect the privacy of protected health information. The Security Rule requires Defendants to implement appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and availability of electronic protected health information. The HIPAA

rules also require Defendants to provide notice of an unauthorized disclosure of unencrypted protected health information, without unreasonable delay and in no case later than 60 calendar days after discovery of a breach.

33.    In the course of their relationship, Defendants collected or created PHI/PII related to Plaintiff and Class Members.

34.    Defendants implicitly promised to use reasonable technical, administrative, and physical safeguards to protect the PHI/PII they collected, created and/or transmitted.  These promises were contained in their privacy policies, websites, forms and other business conduct.

35.    Plaintiff and Class Members relied on Defendants' representations and on these sophisticated business entities to keep their PHI/PII confidential, securely maintained, and to make only authorized disclosures of this information.

36.    Defendants breached their common law, contractual, and/or statutory duties to safeguard the PHI/PII in their custody, which resulted in the Data Breach. Plaintiff and Class Members now face years of monitoring of their personal records. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to fraudulent use of their personal data.

### *This Data Breach Was Preventable*

37.    Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's information was a known risk to each Defendant, and thus, Defendants were on notice that failing to take steps necessary to secure the data from those risks left the data in a dangerous condition.

38.    Upon information and belief, the Data Breach was a direct result of each Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing

personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of PHI/PII; (iv) encrypt PHI/PII in transit and at rest; and/or (v) ensure its third-party vendors were required to implement reasonable data protection measures.

39.    Upon information and belief, Defendants failed to conduct a risk analysis to identify vulnerabilities within their information systems that would permit an unauthorized party to gain access to Private Information. Defendants further failed to encrypt the Private Information.

40.    The Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), has issued guidance documents regarding compliance with the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule.[8]

41.    To detect and prevent cyber-attacks, Defendants could and should have implemented administrative, physical, and technical safeguards including, but not limited to, the following:

Administrative Safeguards

    a.    Implement policies and procedures to prevent, detect, contain, and correct security violations.

    b.    Conduct an accurate and thorough assessment of the potential risks and vulnerabilities to the confidentiality, integrity, and availability of electronic protected health information held by the Defendant.

    c.    Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level.

---

[8] *See*, U.S. Department of Health & Human Services, Security Rule Guidance Material, http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html

d.  Apply appropriate sanctions against employees who fail to comply with the Defendant's security policies and procedures.

e.  Implement procedures to regularly review records of information system activity, such as audit logs, access reports, and security incident tracking reports.

f.  Identify a security official who is responsible for the development and implementation of the Defendant's policies and procedures to prevent, detect, contain, and correct security violations.

g.  Implement procedures: (i) for the authorization and/or supervision of employees who work with electronic protected health information or in locations where it might be accessed; (ii) to determine whether an employee's access to electronic protected health information is appropriate; and (iii) for terminating access to electronic protected health information when the employment of, or other arrangement with, a workforce member ends.

h.  Implement policies and procedures that, based upon the Defendant's access authorization policies, establish, document, review, and modify a user's right of access to a workstation, transaction, program, or process.

i.  Implement a security awareness and training program for all members of Defendant's workforce, including procedures for guarding against, detecting, and reporting malicious software.

j.  Implement policies and procedures to address how the Defendant will identify and respond to suspected or known security incidents; mitigate, to the extent practicable, known harmful effects of security incidents; and document security incidents and their outcomes.

k.  Establish (and implement as needed) policies and procedures for responding to an emergency or other occurrence that damages systems that contain electronic protected health information.

l.  Perform a periodic technical and nontechnical evaluation in response to environmental or operational changes affecting the security of electronic protected health information.

m.  Contractually obtain satisfactory assurances that business associates will appropriately safeguard electronic protected health information.

n.  Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

o.  Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

p.  Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

<u>Physical Safeguards</u>

q.  Implement policies and procedures to limit physical access to its electronic information systems and the facility or facilities in which they are housed, while ensuring that properly authorized access is allowed.

r.  Implement policies and procedures that specify the proper functions to be performed, the manner in which those functions are to be performed, and the physical attributes of the surroundings of a specific workstation or class of workstation that can access electronic protected health information.

s.  Implement policies and procedures that govern the receipt and removal of hardware and electronic media that contain electronic protected health information into and out of a facility, and the movement of these items within the facility.

<u>Technical Safeguards</u>

t.  Implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights.

u.  Implement electronic procedures that terminate an electronic session after a predetermined time of inactivity.

v.  Implement a mechanism to encrypt and decrypt electronic protected health information.

w.  Implement hardware, software, and/or procedural mechanisms that record and examine activity in information systems that contain or use electronic protected health information.

x.  Implement procedures to verify that a person or entity seeking access to electronic protected health information is the one claimed.

y.  Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

z.  Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

aa. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

bb. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

cc. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

dd. Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

ee. Configure firewalls to block access to known malicious IP addresses.

ff. Set anti-virus and anti-malware programs to conduct regular scans automatically.

gg. Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

hh. Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

ii. Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

jj. Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

kk. Consider disabling Remote Desktop protocol (RDP) if it is not being used.

ll. Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

mm. Execute operating system environments or specific programs in a virtualized environment.

nn. Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

oo. Conduct an annual penetration test and vulnerability assessment.

pp. Secure your backups.[9]

qq. Identify the computers or servers where sensitive personal information is stored.

rr. Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

ss. Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

tt. Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer

---

[9] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

uu. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

vv. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

ww. To detect network breaches when they occur, consider using an intrusion detection system.

xx. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[10]

42.     Given that Defendants collected, used, and stored PHI/PII, Defendants could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

43.     Without identifying the potential risks to the personal data in Defendants' possession, Defendants could not identify and implement the necessary measures to detect and prevent the Data Breach.

44.     The occurrence of the Data Breach indicates that Defendants failed to adequately implement, at the very least, zero-trust architecture, data encryption (in transit and at rest), network segmentation, and/or data exfiltration protection, resulting in the Data Breach and the exposure of Plaintiff's and the Class Members' PHI/PII. Furthermore, Defendants could have implemented reasonable data retention/deletion policies that would have reduced the scope of the Data Breach by deleting records that were no longer needed.

45.     Defendants knew and understood unencrypted PHI/PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding PHI/PII

---

[10] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business

and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

### *Plaintiff's Experience*

46.    Plaintiff is customer of BCBS, which is how Defendants obtained his Private Information.

47.    Defendants were in possession of Plaintiff's Private Information before, during, and after the Data Breach.

48.    Plaintiff reasonably understood and expected that Defendants would safeguard his Private Information and would timely notify him in the event such information was compromised in a data breach.  Plaintiff would not have allowed Defendants to maintain his Private Information if he believed Defendants would fail to implement reasonable safeguards to maintain the confidentiality of that data.

49.    Plaintiff is careful with his personal information and keeps it confidential.

50.    As a result of the Data Breach, Plaintiff has spent time responding to the Data Breach, monitoring his accounts and anticipates spending additional time on other mitigation efforts.  This is valuable time that Plaintiff spent that he would have spent on other activities.

51.    The Data Breach has caused Plaintiff to suffer anxiety, fear, and stress, which has been compounded by Defendants' delay in noticing that his Private Information was accessed by cybercriminals in the Data Breach. Plaintiff remains at an increased risk of identity theft or fraud for years to come.

52.    As the Data Breach was only recently disclosed, the full extent of the injuries and damages caused by the Data Breach are not yet fully known.  However, as a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his Private Information

14

was compromised in the Data Breach, including, but not limited to: (i) lost time and money related to monitoring his accounts and credit reports for fraudulent activity and researching the Data Breach; (ii) loss of privacy due to his Private Information being accessed by cybercriminals; (iii) loss of the benefit of the bargain because Defendant did not adequately protect his Private Information; (iv) emotional distress because identity thieves now possess his Private Information and/or his Private Information is available on the dark web; (v) imminent and impending injury arising from the increased risk of fraud and identity theft now that his Private Information has likely been published on the dark web; (vi) diminution in the value of his Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (vii) other economic and non-economic harm.

### *Plaintiff and Class Members Sustained Damages in the Data Breach*

53.     The invasion of the Plaintiff's and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to each Defendants' conduct. As a consequence of the Data Breach, Plaintiff and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

54.     Additionally, Plaintiff and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names, social security numbers, and dates of birth were targeted by a sophisticated hacker known for stealing and reselling sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to each Defendants' conduct.

55.     Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes. An example of criminals piecing together bits and pieces of data is the development of "Fullz"

packages.[11] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

56.     Given the type of targeted attack in this case, the sophistication of the criminal responsible for the Data Breach, the categories of data involved in the Data Breach, hacker behaviors in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiff and the Class Members to assume that their PHI/PII was obtained by, or released to, criminals intending to utilize the data for future identity theft-related crimes or exploitation attempts.

57.     The substantial risk of future identity theft, fraud, or other exploitation that Plaintiff and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

58.     For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts

---

[11] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g*., Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[12]

59.    As a consequence of the Data Breach, Plaintiff and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

60.    Defendants' poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiff and Class Members, collecting their PHI/PII, and then permitting the unauthorized disclosure of the information, Plaintiff and Class Members were deprived of the benefit of their bargain.

61.    When agreeing to pay Defendants for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendants did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

62.    Of course, a stolen Social Security Number can be used to cause serious harm. LifeLock by Norton notes "Five Malicious Ways a Thief Can Use Your Social Security Number," including 1) Financial Identity Theft that includes "false applications for loans, credit cards or bank accounts in your name or withdraw money from your accounts, and which can encompass credit card fraud, bank fraud, computer fraud, wire fraud, mail fraud and employment fraud; 2)

---

[12]*See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps

Government Identity Theft, including tax refund fraud; 3) Criminal Identity Theft, which involves using someone's stolen Social Security number as a "get out of jail free card;" 4) Medical Identity Theft, and 5) Utility Fraud.

63.    It is little wonder that courts have dubbed a stolen Social Security number as the "gold standard" for identity theft and fraud. Social Security numbers are among the worst kind of personal information to have stolen because they are immutable and may be put to a variety of fraudulent uses and are difficult for an individual to change.

64.    According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases." [13] Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains." [14]

65.    The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems. [15]

66.    In fact, "[a] stolen Social Security number is one of the leading causes of identity

---

[13]    *See* Social Security Admin, *Avoid Identity Theft: Protect Social Security Numbers*, https://www.ssa.gov/phila/ProtectingSSNs.htm.
[14]    *Id.*
[15]    Social Security Admin., *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf.

theft and can threaten your financial health."[16] "Someone who has your SSN can use it to impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."[17]

67.     What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

68.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[18]

69.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable because the information is difficult, if not impossible, to change.

70.     Through this Complaint, Plaintiff seeks redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

---

[16] *See* Social Security Admin., *How to Protect Yourself from Social Security Number Identity Theft*, https://www.equifax.com/personal/education/identity-theft/articles/-/learn/social-security-number-identity-theft/.
[17] *See* Julia Kagan, *What Is an SSN? What to Know About Social Security Numbers*, https://www.investopedia.com/terms/s/ssn.asp.
[18] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

## CLASS ALLEGATIONS

71.     Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

72.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class:** All individuals residing in the United States whose Private Information was potentially accessed or acquired by an unauthorized party as a result of the Data Breach that was discovered by Defendant on, or about, October 2, 2025 (the "Class" or "Class Members").

**Rhode Island Sub-Class**: All individuals residing in Rhode Island whose Private Information was potentially accessed or acquired by an unauthorized party as a result of the Data Breach that was discovered by Defendant on, or about, October 2, 2025 (the "Sub-Class").

73.     Excluded from the Class and Sub-Class are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

74.     Collectively, the Nationwide Class and the Rhode Island Sub-Class are referred to as the "Class" or "Class Members."

75.     Numerosity: The members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff currently and such number is exclusively in the possession of Defendants.

76.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. The questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, includes the following:

    a.   Whether and to what extent Defendants had a duty to protect the PHI/PII of Plaintiff and Class Members;

    b.   Whether Defendants had a duty not to disclose the PHI/PII of Plaintiff and Class Members to unauthorized third parties;

    c.   Whether Defendants failed to adequately safeguard the PHI/PII of Plaintiff and Class Members;

    d.   Whether Defendants required their third-party vendors to adequately safeguard the PHI/PII of Plaintiff and Class Members;

    e.   When Defendants learned of the Data Breach;

    f.   Whether Defendants violated the law by failing to reasonably notify Plaintiff and Class Members that their PHI/PII had been compromised;

    g.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h.   Whether Defendants adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

    i.   Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct;

    j.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

77.    <u>Typicality</u>: Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

78.    <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on each Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

79.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of their rights, and the damages suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

80.    <u>Superiority and Manageability</u>: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit many Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

81.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by

the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

82.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

83.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

84.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PHI/PII of the Class, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

85.     Further, Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

86.     Likewise, certification is appropriate because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

     a. Whether Defendants failed to timely notify the Plaintiff and the Class of the Data Breach;

     b. Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, sharing, storing, and safeguarding their PHI/PII;

     c. Whether Defendants' security measures to protect their network were reasonable in light of industry best practices;

d. Whether Defendants' failure to institute adequate data protection measures amounted to negligence;

e. Whether Defendants failed to take commercially reasonable steps to safeguard consumer PHI/PII;

f. Whether Defendants made false representations about their data privacy practices and commitment to the security and confidentiality of personal information; and

g. Whether adherence to HIPAA rules and/or other data privacy recommendations and best practices would have prevented the Data Breach.

## CAUSES OF ACTION

## COUNT 1: NEGLIGENCE

87. Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

88. Defendants had obligations created by the statute, common law, and industry standards to keep Plaintiff's and Class Members' personal information confidential and to protect it from unauthorized access and disclosure.

89. Under Missouri law, Defendants (1) had a duty to protect plaintiff and class members from injury; (2) failed to perform that duty; and (3) injured plaintiff and class members because of such failure . *Weaks v. Rupp*, 966 S.W.2d 387, 392 (Mo. App. 1998).

90. While providing a health care service, each Defendant collects, creates, or shares information about Plaintiff's and Class Members' health status, provision of health care, or payment for health care that can be used to identify Plaintiff and Class Members.

91. Plaintiff and Class Members entrusted Defendants with their PHI/PII with the understanding that Defendants would adequately safeguard their information.

92. Defendants had full knowledge of the types of PHI/PII they collected and the types of harm that Plaintiff and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

93.     By collecting, storing, sharing, and using the Plaintiff's and Class Members' PHI/PII, Defendants assumed a duty to use reasonable means to safeguard the personal data they obtained.

94.     Defendants' duty included a responsibility to ensure they: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology and/or cloud environments; (ii) contractually obligated vendors to implemented reasonable administrative, technical, and physical measures to protect the character of data in their custody; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of their data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach.

95.     Defendants are also covered entities, as defined by HIPAA and, as such were required to comply with the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A, C, and E. Under these rules, Defendants had a duty to implement reasonable and appropriate safeguards for the protected health information under their control. Defendants were also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

96.     The HIPAA Breach Notification Rule, 45 C.F.R. §§164.400-414, requires Defendants to provide notification no later than 60 calendar days after the discovery of an unauthorized disclosure of unencrypted protected health information. Such notice was necessary

to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any fraudulent usage of their PHI/PII.

97.    Defendants breached their statutory and/or common law duties by failing to conduct regular privacy assessments and security audits; failing to implement measures such as encryption to protect PHI; and/or failing to timely notify Plaintiff and Class Members of the Data Breach. Defendants breached common law duties by failing to use reasonable measures to maintain the confidentiality of Plaintiff and Class Members' Private Information.

98.    Plaintiff and Class Members were within the class of persons HIPAA was intended to protect and the Data Breach was the type of harm the statue was intended to guard against.

99.    The injuries resulting to Plaintiff and the Class because of each Defendant's failure to use adequate security measures was reasonably foreseeable.

100.    Plaintiff and the Class were the foreseeable victims of a data breach. Defendants knew or should have known of the inherent risks in collecting and storing PHI/PII and the critical importance of protecting that data. By failing to adequately protect the PHI/PII in their custody, Defendants acted with a reckless indifference to the consequences.

101.    Plaintiff and the Classes had no ability to protect the PHI/PII in Defendants' possession. Defendants were in the best position to protect against the harms suffered by Plaintiff and the Class as a result of the Data Breach.

102.    But for Defendants' breach of duties owed to Plaintiff and the Class, their PHI/PII would not have been compromised. There is a close causal connection between Defendants' failure to implement reasonable security measures to protect the PHI/PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class.

103.    As a result of the Data Breach, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) statutory damages; (vi) nominal damages; and (vii) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under each Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PHI/PII.

104.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

105.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to: (i) strengthen their data protection procedures; and (ii) to provide adequate credit monitoring/identity theft protection to all affected by the Data Breach.

## COUNT 2: BREACH OF CONTRACT

106.    Plaintiff alleges every allegation contained above, as if fully set forth herein.

107.    Defendants had valid contracts with various hospitals, clinics and healthcare providers. It also had contracts with its vendor. A principal purpose of all of those contracts was to securely store, transmit and safeguard the PII/PHI of Plaintiff and Class Members.

108.    Upon information and belief, Defendants and each of the contracting hospitals and clinics expressed an intention that Plaintiffs and Class Members were intended third party beneficiaries of these agreements.

109.    Plaintiffs and Class Members are also intended third party beneficiaries of these agreements because recognizing them as such is appropriate to effectuate the intentions of the

parties, and the circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

110.    Defendants breached its agreements with the contracting hospitals and clinics by allowing the data breach to occur, and as otherwise set forth herein.

111.    Defendants breach caused foreseeable and material damages to Plaintiffs and Class Members.

## COUNT 3: BREACH OF IMPLIED CONTRACT

112.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

113.    Defendants create or collect PHI/PII in the ordinary course of providing healthcare related services. Plaintiff and Class Members reasonably understood that a portion of the funds they paid for these services would be used to provide cybersecurity and other measures designed to maintain the confidentiality of the PHI/PII created or provided during the relationship.

114.    Plaintiff and Class Members' understanding was reasonable, considering Defendants published privacy policies to inform the public about how Defendants collect, use, share, and protect the information they gather. Defendants also represented through various applications, forms, websites, and other business conduct that they will maintain the confidentiality of Plaintiff and Class Member's data.

115.    In so doing, Plaintiff and Class Members entered implied contracts with Defendants by which Defendants agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information they collect and store.

116.    The implied promise of confidentiality includes consideration beyond those preexisting duties owed under HIPAA and other state or federal regulations. The implied promises include, but are not limited to: (i) taking steps to ensure any persons or vendors with access to Private Information protect the confidentiality of that information; (ii) taking steps to ensure that access to Private Information in the possession and control of Defendant, its agents, and/or vendors is limited to achieve an authorized medical purpose; (iii) restricting access to Private Information to properly trained agents and/or vendors; (iv) designing and implementing appropriate data deletion/retention policies to protect the Private Information from unauthorized access and disclosure; (v) encrypting the Private Information (in transit and at rest); (vi) implementing multifactor authentication for access to the Private Information; and, (vii) deploying anti-data exfiltration solutions to prevent the unauthorized acquisition of Private Information.

117.    Plaintiff and Class Members would not have entrusted their PHI/PII to Defendants in the absence of implied promise to implement reasonable data protection measures.

118.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contract with Defendants.

119.    Defendants breached the implied contract with Plaintiff and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendants' web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendants collected would be adequately protected and that the Defendants would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information. Defendants breached the implied contracts with Plaintiff and Class Members by failing to maintain the confidentiality of the Plaintiff and Class Members' Private Information.

120.    As a direct and proximate result of the Defendants' breach of an implied contract, Plaintiff and Class Members suffered injuries as described herein, and are entitled to actual and punitive damages, statutory damages, and reasonable attorneys' fees and costs, in an amount to be proven at trial.

## COUNT 4: UNJUST ENRICHMENT

121.    Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

122.    Plaintiff brings this Count in the alternative to the breach of implied contract count above.

123.    By providing their PHI/PII, in connection with healthcare related services, or the payment therefore, Plaintiff and Class Members conferred a monetary benefit on Defendants. Defendants knew that Plaintiff and Class Members conferred a benefit upon them and have accepted and retained that benefit.

124.    A portion of that benefit was to be used by Defendants to provide data security measures that were appropriate for the nature of the data collected. The exact amount of Defendants' budget that was to be allocated to data security measures is unknown to Plaintiff at this time.

125.    By collecting the PHI/PII, Defendants were obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been compromised or stolen.

126.    Defendants failed to secure Plaintiff's and Class Members' PHI/PII and, therefore, it would be unjust for Defendants to retain any of the benefits that Plaintiff and Class Members conferred upon Defendants without paying value in return.

127.    As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) statutory damages; (vi) nominal damages; and (vii) the continued and increased risk their data will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under each Defendants' possession or control and is subject to further unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the PHI/PII.

128.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## COUNT 5: BREACH OF FIDUCIARY DUTY

129.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

130.    Defendants had a fiduciary duty to Plaintiff and Class Members as a result of the relationship whereby Defendants became the custodians of Plaintiff and Class Members' PHI. Plaintiff and Class Members reposed trust and confidence in Defendants to adequately safeguard the PHI collected or created during that relationship and to timely notify them of a Data Breach.

131.    Defendants breached their fiduciary duty to Plaintiff and Class Members by failing to adequately protect against cybersecurity events and failing to notify Plaintiff and Class Members in a reasonable time after discovery of the Data Breach.

132.    Defendants' fiduciary duties and violations thereof are informed by HIPAA. Defendants breached the fiduciary duties owed to Plaintiff and Class Members by failing to ensure the confidentiality, integrity, and availability of electronic PHI that Defendants created, received, maintained, and transmitted, in violation of 45 C.F.R. §164.306(a)(1).

133.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to implement technical policies and procedures for information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1).

134.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. §164.308(a)(1).

135.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. §164.306(a)(2).

136.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3).

137.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. §164.306(a)(4).

138.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §164.502, *et seq.*

139.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to effectively train all members of its workforce on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. §164.530(b) and 45 C.F.R. §164.308(a)(5).

140.    Defendants breached fiduciary duties owed to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. §164.530(c).

141.    As a direct and proximate result of Defendants' breach of fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, as described herein. Accordingly, Plaintiff and Class Members are entitled to compensatory, consequential, and/or nominal damages in an amount to be determined.

142.    Defendants' breaches of fiduciary duty are ongoing, in that they still hold the PHI of Plaintiff and Class Members in an unsafe and insecure manner.

143.    Plaintiff and Class Members are entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; (iii) provide adequate credit monitoring/identity theft protection to all Class Members; and (iv) provide complete and accurate information to affected individuals about the Data Breach and the risk patients face.

**COUNT 6: DECLARATORY JUDGMENT**

144.     Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

145.     Plaintiff and Class Members are consumers of Defendants' products and services. Defendants required customers, including Plaintiff and Class Members, to submit PII/PHI in the ordinary course of providing products or services.

146.     Defendants gathered and stored the PII/PHI of Plaintiff and Class Members as part of their business. Plaintiff and Class Members entrusted Defendants with their PII/PHI with the understanding that Defendants would adequately safeguard their information.

147.      Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary. Furthermore, the Court has broad authority to restrain acts, that are tortious and violate the terms of the federal and state statutes described herein.

148.     Under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies.

149.     Defendants violated 15 U.S.C. § 45 by failing to adhere to their own privacy policies regarding the confidentiality and security of Plaintiff's and Class Members' personal information. Defendants further violated the statute by failing to use reasonable measures to protect PHI/PII.

150.     Defendants' conduct created a likelihood of confusion or misunderstanding regarding their actual data privacy and security practices. Upon information and belief, Defendants promised to protect Plaintiff's and Class Members' PII/PHI via their privacy policies, but allowed the unauthorized access to this personal and protected health information;

34

Defendants failed to disclose material facts that the Plaintiff's and Class Members' PII/PHI would be disclosed to unauthorized third parties; Defendants failed to obtain Plaintiff's and Class Members' consent in transmitting their PII/PHI to a third party; and Defendants knowingly violated industry standards regarding the protection of Plaintiff's and Class Members' PII/PHI.

151.    Defendants' unfair or deceptive acts affected public interests, including those of Plaintiff and Class Members. Defendants knew or should have known that it was likely to mislead customers who were acting reasonably. Defendants engaged in unfair or deceptive practices by breaching their duties to provide reasonable technical and organizational data security policies, procedures, and practices. Defendants' failure to adhere to their published privacy policies and procedures is offensive to established public policy and is substantially injurious to consumers as evidenced by the massive Data Breach.

152.    Had Plaintiff and Class Members known Defendants would not follow their own published security practices they would not have purchased (or continued to purchase) Defendants' services. Defendants' deceptive acts, as described herein, proximately caused Plaintiff and Class Members damages.

153.    As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered damages including, but not limited to: (i) invasion of privacy; (ii) theft of their PHI/PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) out-of-pocket costs and expenses; and (v) attorneys' fees and court costs.

154.    Plaintiff alleges that Defendants' data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PHI/PII and remain at imminent risk that further compromises of their PHI/PII will occur in the future.

35

155.    Plaintiff and Class Members have suffered irreparable injury, and will continue to suffer injury in the future, because of Defendants' deceptive trade practices, which places Plaintiff and Class Members at imminent risk that further compromises of their PHI/PII will occur in the future. As such, the remedies available at law are inadequate to compensate for that injury.

156.    The Court also should issue corresponding prospective injunctive relief requiring that Defendants employ adequate data protection practices consistent with law and industry standards.

157.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Among other things, if another massive data breach occurs, Plaintiff will likely be subjected to fraud, identity theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

158.    The issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by encouraging Defendants to take necessary action to prevent another data breach, thus eliminating the additional injuries that would result to Plaintiff and the multitude of individuals whose PHI/PII would be at risk of future unauthorized disclosures.

159.    As a result of the Defendants' false, misleading, or deceptive acts, regarding their data security practices, the consuming public in general, Plaintiff, and Class Members suffered injuries including, but not limited to, the future and continued risk their PHI/PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains under each Defendant's possession or control and is subject to further

unauthorized disclosures so long as Defendants fail to implement appropriate and reasonable measures to protect the data.

160.    Plaintiff and Class Members are entitled to attorneys' fees, costs, and injunctive relief requiring Defendants to: (i) strengthen their data protection procedures; and (ii) to provide adequate dark web monitoring and/or credit monitoring/identity theft protection to all affected by the Data Breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully requests that the Court enter judgment as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Class and counsel for Plaintiff as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the statues and causes of action referenced herein;

C.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.    Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiff and the Class;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

claims in this Complaint and of all issues in this action so triable as of right.

Dated: December 30, 2025.                    Respectfully Submitted,

                                             */s/ James J. Rosemergy*
                                             James J. Rosemergy
                                             **CAREY, DANIS & LOWE**
                                             8235 Forsyth Blvd, Suite 1100
                                             St. Louis, MO 63105
                                             Telephone:314-678-1064
                                             Fax: 314-721-0905
                                             jrosemergy@careydanis.com


                                               AND

                                             Paul J. Doolittle
                                             **POULIN | WILLEY | ANASTOPOULO,
                                             LLC**
                                             32 Ann Street, Charleston, SC 29403
                                             Tel: (803) 222-2222
                                             Email: pauldoolittle@poulinwilley.com
                                                     cmad@poulinwilley.com

                                             *Attorney for Plaintiff and Proposed Class*

38